UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARGARET HOPKINS, individually and on behalf of a class of similarly situated individuals, | § § § § | No. 5:16–CV–365–DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| GREEN DOT CORPORAITON, GREEN DOT BANK d/b/a BONNEVILLE BANK or GO BANK, WAL-MART STORES, INC., WALGREEN CO., DOLLAR TREE STORES, INC., FAMILY DOLLAR, INC., and CVS PHARMACY, INC., | § § § § § § § § | |
| | § | |
| Defendants. | § | |

ORDER (1): GRANTING DEFENDANTS' MOTION TO DISMISS;
(2) DENYING MOTION TO AMEND COMPLAINT; AND
(3) MOOTING MOTION FOR SUMMARY JUDGMENT

Before the Court is a Motion to Dismiss filed by Defendants Green

Dot Corporation, Green Dot Bank, d/b/a Bonneville Bank or Go Bank, Wal-Mart

Stores, Inc., Walgreen Co., Dollar Tree Stores, Inc., Family Dollar, Inc., and CVS

Pharmacy, Inc. (collectively, "Defendants") (Dkt. # 19), a Motion for Leave to

Amend Complaint filed by Plaintiff Margaret Hopkins (Dkt. # 26), and a Motion

for Summary Judgment filed by Plaintiff Margaret Hopkins (Dkt. # 42). Pursuant

to Local Rule CV-7(h), the Court finds these matters suitable for disposition

1

without a hearing.  After reviewing the motions, responses, and replies, for the

reasons that follow, the Court **DENIES** Defendants' Motion to Dismiss (Dkt.

# 19), **DENIES** Plaintiff's Motion to Amend Complaint (Dkt. # 26), and **DENIES**

**AS MOOT** Plaintiff's Motion for Summary Judgment (Dkt. # 42).

<u>BACKGROUND</u>

This lawsuit arises out of electronic funds transfer cards ("EFT

cards") sold by Green Dot Bank, an FDIC member bank and wholly-owned

subsidiary of Green Dot Corporation (collectively, "Green Dot").  ("Compl.," Dkt.

# 1-2 ¶ 15.)  According to Hopkins, each Green Dot EFT card is labeled with a

unique serial number; consumers deposit cash into electronic bank accounts

associated with the serial number, and then use the EFT card in the same manner

as a debit card.  (<u>Id.</u> ¶¶ 13–14.)  Consumers pay activation fees and reloading fees

in order to deposit money onto the EFT cards.  (<u>Id.</u> ¶ 17.)  Importantly, funds

transfers conducted with EFT cards are "anonymous, untraceable, and

irreversible."  (<u>Id.</u> ¶ 18.)  One such EFT card is called a "Green Dot MoneyPak

card" (the "MoneyPak card").  (<u>Id.</u> ¶ 28.)  According to Hopkins, Green Dot

partners with Wal-Mart Stores, Inc. ("Wal-Mart"), Walgreen Co. ("Walgreens"),

Dollar Tree Stores, Inc. ("Dollar Tree"), Family Dollar, Inc. ("Family Dollar"), and

CVS Pharmacy, Inc. ("CVS"), (collectively, the "retail defendants") to sell EFT

cards, including the MoneyPak card.  (Compl. ¶ 13.)

2

In March 2014, Hopkins, who is 83-years old, claims she received a phone call from an unknown individual pretending to be her grandson. (Compl. ¶ 28.) The caller claimed to be wrongfully incarcerated in Florida, and asked Plaintiff to send him the money for bail and court costs using MoneyPak cards. (Id. ¶ 28–29.) Following the caller's instructions, Hopkins purchased four MoneyPak cards at a Wal-Mart in New Braunfels, Texas, on March 14, 2014. (Id. ¶ 30.) Hopkins deposited a total of $4,000.00. (Id.) The following day, Hopkins followed the caller's instructions, returned to the New Braunfels Wal-Mart, and purchased six more MoneyPak cards, depositing a total of $6,000.00 more dollars. (Id. ¶ 31.) On March 18, 2014, Hopkins purchased eight more MoneyPak cards at a Wal-Mart in San Antonio, Texas, depositing a total of $4,000.00. (Id. ¶ 32.) Hopkins states she subsequently provided the caller with the serial number from the back of each card; the caller used the serial numbers to transfer the money from the cards. (Id. ¶ 33.) It was not until Hopkins saw her grandson several weeks later that she realized she had fallen victim to a fraudulent scheme. (Id. ¶ 34.) Hopkins reported the loss to Green Dot, but was unable to recover her money. (Id. ¶ 35.)

On March 4, 2016, Hopkins brought suit against defendants in the 433rd District Court of Comal County, Texas. (Compl.) On April 12, 2016, Defendants, all of whom are out-of-state residents, removed the case to this Court

3

pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332.  (Dkt. # 1.)
Plaintiff alleges causes of action under the Texas Deceptive Trade Practices-
Consumer Protection Act ("DTPA"), Tex. Bus. & Comm. Code § 17.41 et seq.
(Compl. ¶¶ 49–62), and under a theory of negligent misrepresentation (id. ¶¶ 63–
69).  She seeks damages to recover her economic losses, compensatory damages
for the fear and distress she has suffered as a result of the fraud, punitive damages
under the DTPA, and attorney's fees.  (Id. ¶¶ 72–4.)

Hopkins further seeks to institute these claims in a class action on
behalf of all those individuals who have fallen victim to similar scams after
purchasing Green Dot EFT cards.[1]  (Compl. ¶¶ 37–48.)  On behalf of the putative
class, Plaintiff seeks to recover a maximum damages award of $60,000,000.00.
(Id. ¶¶ 76–79.)

## LEGAL STANDARD

I.    12(b)(1) Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may
move to dismiss a complaint for lack of subject-matter jurisdiction.  "A case is

---

[1] Specifically, Hopkins seeks to certify the following class:

All natural persons in the United States who have suffered economic
harm as a result of third party fraud perpetrated using EFT cards
marketed, sold, or administered in the State of Texas by Green Dot
Corporation.  Excluded from the class are Defendants; Defendants'
directors, officers, and managers; and the legal representatives, heirs,
successors, and assigns of any excluded person.

properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998). The plaintiff, as the party asserting jurisdiction, bears the burden of proving that subject matter jurisdiction exists. Choice Inc. of Tex. v. Greenstein, 691 F.3d 710, 714 (5th Cir. 2012).

When deciding a motion to dismiss pursuant to Rule 12(b)(1), the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts, plus the Court's resolution of disputed facts. Freeman v. United States, 556 F.3d 326, 334 (5th Cir. 2009). A 12(b)(1) motion should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. Home Builders Ass'n of Mississippi, 143 F.3d at 1010.

II.    12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Review is limited to the contents of the complaint and matters properly subject to judicial notice. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). In analyzing a motion to dismiss for failure to state a claim, "[t]he court

accept[s] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).

      To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

III.   Motion to Amend Complaint

      "'A court should freely give leave' to amend pleadings 'when justice so requires.'" Moore v. Manns, 732 F.3d 454, 456 (5th Cir. 2013) (quoting Fed. R. Civ. P. 15(a)(2)). "That generous standard is tempered by the necessary power of a district court to manage a case." Priester v. JP Morgan Chase Bank, N.A., 708 F.3d 667, 678 (5th Cir. 2013) (quoting Schiller v. Physicians Resource Group Inc., 342 F.3d 563, 566 (5th Cir. 2003)); see also Manns, 732 F.3d at 456 ("[s]uch leave is not automatic, however, and is at the discretion of the district court").

## DISCUSSION

I.      <u>12(b)(1) Motion to Dismiss for Lack of Standing</u>

Defendants argue that the retail defendants other than Wal-Mart must be dismissed because Plaintiff did not purchase a MoneyPak card at any of these retailers, and lacks standing to bring suit against them.  (Dkt. # 19 at 7–8.)

"Standing, as 'an essential and unchanging part of the case-or-controversy requirement of Article III,' <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992), determines the courts' 'fundamental power even to hear the suit.'" <u>Grant ex rel. Family Eldercare v. Gilbert</u>, 24 F.3d 383, 386 (5th Cir. 2003) (quoting <u>Ford v. Nylcare Health Plans, Inc.</u>, 301 F.3d 329, 333 (5th Cir. 2002)). Where the plaintiff cannot establish standing to sue a defendant, the Court must dismiss the defendant for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), because it lacks the power to adjudicate the case.

Article III standing has three elements: (1) the plaintiff must have suffered an injury in fact that is concrete and particularized and actual or imminent, and not conjectural or hypothetical, (2) there must be a causal nexus between the injury and the conduct complained of; the injury must be fairly traceable to the defendant, and (3) it must be likely, not speculative, that the injury will be redressed by a favorable decision.  <u>Lujan</u>, 504 U.S. at 560.  An injury is particularized where it "affect[s] the plaintiff in a personal and individual way."

7

Id. at 560, n.1.  A present case or controversy may not be shown merely by past exposure to illegal conduct if unaccompanied by any continuing, present adverse effects.  City of Los Angeles v. Lyons, 461 U.S. 95, 95–96 (1983).

Hopkins has pled that she suffered an actual injury: she was defrauded of a total of $14,083.52: the $14,000 she loaded onto eighteen separate MoneyDot cards, as well as $83.52 in activation fees.  Accordingly, Hopkins has sufficiently pled that she suffered an injury to satisfy the first requirement for standing.  See Lujan, 504 U.S. at 560.

However, Hopkins has failed to establish the requisite causal nexus between her injury and those retail defendants other than Wal-Mart.  To establish a causal nexus with these defendants, Hopkins must plead that her "asserted injury was the consequence of the defendants' actions, or that prospective relief will remove the harm."  Warth v. Seldin, 422 U.S. 490, 505 (1975).  Hopkins states that each of the retail defendants—not just Wal-Mart—was involved in developing the marketing strategy for the MoneyPak cards, and that each was engaged in the deceptive marketing and sales of the EFT cards.  (Dkt. # 23 at 4–6.)  However, Hopkins does not allege that she purchased a MoneyPak card at any of the retail defendants other than Wal-Mart.  Further, Plaintiff alleges she purchased the MoneyPak cards at Wal-Mart because she was following the instructions of the criminal masquerading as her grandson, not that she felt decided to purchase the

cards at Wal-Mart after noticing that they were sold at many local retail establishments. Hopkins' injury is simply not "fairly traceable to the challenged action of the defendant," nor is it "likely to be redressed by a favorable judicial decision" on the claims she has brought. Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1386 (2014). For example, even if the Court ultimately found that Green Dot and Wal-Mart had engaged in violations of the DTPA and had made negligent misrepresentations as to the MoneyPak cards, a ruling against them would not implicate the other retail defendants. Accordingly, Hopkins has failed to allege both the second and third elements of constitutional standing.

Hopkins attempts to establish standing under a variety of theories. She argues that the Rule 23(a)(3) typicality requirement subsumes the representational standing inquiry when a named plaintiff seeks to bring a claim against multiple defendants on behalf of a class. (Dkt. # 23 at 6–7.) She also argues she has standing under the juridical link doctrine and the "joinder scrutiny" approach. (Id. at 7–9.) However, Hopkins cites primarily to a law journal note in support of these arguments. Daniel D. DeVougas, Without a Leg to Stand On? Class Representatives, Federal Courts, and Standing Desiderata, 97 Cornell L. Rev. 627, 632 (2012). While these theories have been utilized in a limited capacity by courts in other jurisdictions, this Court's research indicates that that these theories

9

have not yet been adopted by the Fifth Circuit.  See, e.g., In re Dreyfus Aggressive
Growth Mut. Fund Litig, No. 98–CIV–4318 (HB), 2000 WL 1357509, at *5
(S.D.N.Y. Sept. 20, 2000); Hoxworth v. Blinder, Robinson, & Co., 980 F.2d 912,
923 (3d Cir. 1992).   Plaintiff cites no Fifth Circuit cases to the contrary.

   Hopkins sets forth no legally sound method by which she may
establish standing against the retail defendants other than Wal-Mart.  The failure to
allege the "irreducible constitutional minimum of standing," requires the Court to
dismiss Walgreens, Dollar Tree, Family Dollar, and CVS from suit.  Accordingly,
Walgreens, Dollar Tree, Family Dollar, and CVS are hereby **DISMISSED**
**WITHOUT PREJUDICE**.

II.  12(b)(6) Motion to Dismiss for Failure to State a Claim

  A. DTPA Claims

   In order to state a claim under the DTPA, a plaintiff must allege that
(1) she "is a consumer under the DTPA;" (2) that defendant "committed a false,
misleading, or deceptive act under section 17.46(b) of the DTPA, breached an
express or implied warranty, or engaged in an unconscionable action or course of
action;" and (3) that this act "[was] the producing cause of [plaintiff's] actual
damages."  Brown v. Bank of Galveston, N.A., 963 S.W.2d 511, 513 (Tex. 1998);
see also Brittan Commc'n Int'l Corp. v. Sw. Bell Tel. Co., 313 F.3d 899, 907 (5th
Cir. 2002).

Defendants argue that Hopkins has failed to establish that she is a "consumer" under the DTPA, and that the Defendants' actions were not the "producing cause" of her damages.  The Court considers each element of a DTPA claim, but places particular focus on the two in dispute, below.

      1.  <u>Whether Hopkins is a consumer for purposes of the DTPA</u>

A plaintiff must first establish that she is a consumer in order to bring a claim under the DTPA.  Tex. Bus. & Comm. Code § 17.50(a); <u>Doe v. Boys and Girls Club of Greater Dallas, Inc.</u>, 907 S.W. 2d 472, 478 (Tex. 1995).  A "plaintiff's status as a consumer is a question of law for the trial court to determine."  <u>F.D.I.C. v. Munn</u>, 804 F.2d 860, 863 (5th Cir. 1986).  Under the DTPA, a consumer is "an individual, partnership, [or] corporation ... who seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code § 17.45(4).  "[A] person must qualify as a consumer as that term is defined in section 17.45(4) to maintain a private cause of action . . . under section 17.50 of the [DTPA]."[2] <u>Cameron v. Terrell & Garrett, Inc.</u>, 618 S.W.2d 535, 538–39 (Tex. 1981) (citing <u>Riverside Nat'l Bank v. Lewis</u>, 603 S.W.2d 169, 173 (Tex. 1980)).  Under Texas law, there are "at least two requirements that must be established for

---

[2] "To ignore the Legislature's definition of 'consumer,' and permit any aggrieved person to maintain a private cause of action under the DTPA, ignores the well established presumption that legislative choice of words is such that every word has meaning."  <u>Riverside Nat'l Bank v. Lewis</u>, 603 S.W.2d 169, 173 (Tex. 1980).

a person to qualify as a consumer under the DTPA." <u>Cameron</u>, 618 S.W.2d 539.

First, "the person must have sought or acquired goods or services. <u>Id.</u> (citing

<u>Lewis</u>, 603 S.W.2d at 174).  Second, "the goods or services purchased or leased

must form the basis of the complaint." <u>Cameron</u>, 618 S.W.2d 539.  "If either

requirement is lacking, the person aggrieved by a deceptive act or practice must

look to the common law or some other statutory provision for redress." <u>Id.</u>

      Importantly, "'[g]oods' has a fairly certain meaning under Texas law.

The DTPA defines 'goods' as 'tangible chattels or real property purchased or

leased for use,'" but "does not include intangible chattels such as stocks . . . money

. . . or loans." <u>Munn</u>, 804 F.2d at 863 (quoting Tex. Bus. & Comm. Code

§ 17.45(1)) (internal citations omitted).  "'Services' include 'work, labor, or

service purchased or leased for use, including services furnished in connection

with the sale or repair of goods." <u>Knight v. Int'l Harvester Credit Corp.</u>, 627

S.W.2d 382, 388 (Tex. 1982).

      "Under Texas law, money (including loans) and intangibles are not

'goods.'" <u>Montalvo v. Bank of Am. Corp.</u>, 864 F. Supp.2d 567, 574 (W.D. Tex.

2012) (quoting Tex. Bus. & Comm. Code § 17.45).  Further, it is clear under Texas

law that the act of borrowing money does not constitute the acquisition of a good

or service.  For example, in <u>Riverside Nat. Bank v. Lewis</u>, the Supreme Court of

Texas examined whether the act of lending money constitutes a good or a service

12

under the DTPA.  603 S.W.3d 169 (Tex. 1980).  The Court found that merely

seeking "to pay for the use of money over a period of time" did not constitute the

acquisition of a "good or service" under the DTPA, because "[o]ther than Lewis'

payment for the use of money, there was nothing else for which he paid, or which

he sought to acquire."  Id. at 173.  The Court reached this determination after

examining the DTPA in the context of the full Texas Business and Commerce

Code, and finding that the Texas legislature had specifically declined to include

money as a "good," nor the use of money as a "service," within the DTPA.  Id. at

174–76 ("Money, as money, is quite obviously neither work nor labor.  Seeking to

acquire the use of money likewise is not a seeking of work or labor.").

       Hopkins suggests that we consider her status as a consumer through

the lens of Knight v. Int'l Harvester and Flenniken v. Longview Bank and Trust

Co.; both cases are distinguishable here.  672 S.W.2d at 382; 661 S.W.2d 705

(Tex. 1983).  The Court in Knight found that the plaintiff was a consumer under

the DTPA after determining that the two defendants against whom he brought suit

were so "inextricably intertwined" in the financing and sale of a dump truck to

Plaintiff that it was clear that the plaintiff sought to acquire a good—a dump

truck—as opposed to "money or the use of money" in obtaining the financing at

issue in the suit.  Knight, 627 S.W.3d at 389.  In Flenniken, the plaintiffs entered

into a builder's and mechanic's lien contract with a contractor to construct a house

on their property; the contractor transferred the lien and note to the defendant bank, which foreclosed on the property when the contractor abandoned the project. 661 S.W.2d at 706–07.  The Court found that unlike Riverside, where the plaintiff merely sought "money in a transaction," the plaintiff in Flenniken sought to acquire a house; accordingly the house, rather than the lien, was the good plaintiffs sought, causing them to be consumers under the DTPA.  Id. at 707–08. Importantly, the court held that "[a] plaintiff establishes his standing as a consumer in terms of his relationship to a transaction . . . The only requirement is that the goods or services sought or acquired by the consumer form the basis of his complaint."  Id. at 707.

The question that arises here, then, is whether Plaintiff, who did not borrow money, but rather paid a small fee in order to use her money in a different format – namely on a plastic EFT card as opposed to a direct cash transaction – has acquired a good or service, as defined in the DTPA.[3]  When viewed through this lens, it is clear that Hopkins' goal in purchasing the MoneyPak cards was not to acquire a particular service, but merely to convert her money to a different format.

---

[3] Plaintiff argues that the EFT cards should not be classified as "money in a different form," but as an "on-demand electronic money transfer service," that is "more convenient than transferring money through a brick-and-mortar money transfer business like Western Union."  (Dkt. # 23 at 11.)  Even viewing the transaction in this manner, the only good sought or exchanged here is money, unlike cases such as Knight or Flenniken where the plaintiff was found to be a consumer after obtaining a loan to obtain a specific good, the identity of which was known to the lender.

See Flenniken, 661 S.W.2d at 707; see also Cushman v. GC Servs., LP, 657 F.

Supp. 2d 834, 842 (S.D. Tex. 2009) (finding credit card holder was not a consumer

for purposes of the DTPA, even if she "were to argue that she 'sought to acquire

services' when she applied for her American Express credit card").  By this logic,

while Hopkins may well have a cause of action under other consumer protection

laws, she is not a consumer for the purposes of the DTPA.  See La Sara Grain Co.

v. First Nat. Bank of Mercedes, 673 S.W.2d 558, 566–67 (Tex. 1984) (finding that

plaintiff corporation, which obtained a loan from a bank, could not qualify as a

consumer under the DTPA absent evidence that the plaintiff's agent had

represented to the bank that the objective of the loan "was to purchase or lease

goods or services," because a "loan involves only the extension of credit");

Montalvo v. Bank of Am. Corp., 864 F. Supp. 2d 567, 580 (W.D. Tex. 2012)

(receipt of free services from a mortgage servicer in connection with a loan

modification is not a good or service as defined by the DTPA).

  While the Court has determined that Hopkins is not a consumer for

purposes of the DTPA, it will evaluate the remaining elements of a DTPA claim

for the sake of thoroughness.

  2. Whether Defendants Committed a False, Misleading, or Deceptive
Act

  To state a claim under the DTPA, a plaintiff must also allege that the

defendant committed certain enumerated "[f]alse, misleading, or deceptive acts or

practices in the conduct of any trade or commerce." Tex. Bus. & Comm. Code § 17.46(a). Hopkins alleges that Defendants' use of logos from companies such as Visa, MasterCard, H&R Block, eBay, and PayPal on the EFT cards misled her into believing that the cards were associated with or approved by these known and trusted companies, in violation of Tex. Bus. & Comm. Code §§ 17.46(b)(1)–(3). (Compl. ¶¶ 55(a)–(c).) Hopkins alleges that Defendants failed to disclose the location of Green Dot Bank, and further failed to disclose that the serial numbers on each card were linked to FDIC-insured bank accounts, in violation of Tex. Bus. & Comm. Code §§ 17.46(b)(4)–(5). (Id. ¶¶ 55(d)–(e).) Hopkins contends that Defendants did not disclose the existence of the Cardholder Agreement at the time of sale, and unlawfully used the Agreement as a basis to deny Hopkins reimbursement after she reported the fraudulent transfers, in violation of Tex. Bus. & Comm. Code §§ 17.46(b)(12), (20), and (24). (Id. ¶ 55(f).) Most importantly, Hopkins contends that Defendants failed to adequately disclose or warn about the risk of fraud associated with the EFT cards, in violation of Tex. Bus. & Comm. Code ¶ 17.46(b)(24). (Id. ¶ 55(g).)[4]

---

[4] Hopkins also contends that Defendants violated § 17.46(b)(24) for failure to comply with the Electronic Funds Transfer Act, 15 U.S.C. § 1693, et seq.. (Compl. ¶ 55(h).) The Court does not consider this argument, because it finds that even without this element, Hopkins has adequately alleged that Defendants committed misleading and deceptive acts under the DTPA.

Viewing the evidence in a light most favorable to the Plaintiff, the Court finds that she has sufficiently pled that Defendant committed misleading and deceptive acts under the DTPA, and this element is satisfied.

### 3. Act was Producing Cause of Damages

Defendants also argue that Hopkins' DTPA claim fails because Defendants' alleged action or inaction was not a producing cause of her injury. (Dkt. # 19 at 10–12.)  Hopkins counters that Defendants' actions were a "substantial factor" in bringing about her injury.  (Dkt. # 23 at 12–15.)

The Texas Legislature amended the causation standard in the DTPA "to change [it] from 'adversely affected' to the current 'producing cause' standard," a higher standard of causation.  Metro Allied Ins. Agency, Inc. v. Lin, 304 S.W.3d 830, 834 (Tex. 2009) (quoting Tex. Bus. & Comm. Code § 17.50). "Both producing cause and proximate cause contain the cause-in-fact element, which requires that the defendant's act be 'a substantial factor in bringing about the injury and without which the harm would not have occurred.'"  Lin, 304 S.W.3d at 835 (quoting Doe, 907 S.W.2d at 481).  The Texas Supreme Court has very clearly defined "cause in fact," stating that "[c]ause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred."  HIS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 799 (Tex. 2004).  Conversely, "cause in fact is not

17

established where the defendant's [act] does no more than furnish a condition which makes the injuries possible." Id. at 799.

Further, when analyzing this element, the Texas Supreme Court has emphasized that it is important to "keep in mind why the Legislature created this simple, nontechnical cause of action: to protect consumers in consumer transactions." Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 649 (Tex. 1996). With this in mind, Texas courts have routinely affirmed that there must be "a connection between the plaintiffs, their transactions, and the defendants' conduct." Id. (collecting cases); see Doe, 907 S.W.2d at 479 (explaining that defendant's failure to disclose the criminal record of one of its employees was not the producing cause of the employee's subsequent child abuse, because the employee separately acted to gain the confidence of plaintiffs' grandparents before abusing the children, breaking the causal connection between the omission and the act); Home Sav. Ass'n v. Guerra, 733 S.W.2d 134, 136 (Tex. 1987) ("To hold a creditor liable in a consumer credit transaction, the creditor must be shown to have some connection either with the actual sales transaction or with a deceptive act related to financing the transaction.").

Here, while Defendants' allegedly inadequate disclosures and fraud protection measures certainly furnished a condition which made Hopkins' injuries possible, these alleged failures were clearly not the producing cause of her injuries.

18

See Amstadt v. U.S. Brass Corp., 919 S.W.2d at 650 ("We find no authority for shifting the focus of a DTPA claim from whether the defendant committed a deceptive act to whether a product that was sold caused an injury.").  Hopkins alleges that she would not have purchased the GreenDot MoneyPak cards at the behest of the fraudster pretending to be her grandson, if the cards bore adequate warnings regarding potential fraud.  (Dkt. # 23 at 14.)  Assuming this to be true for purposes of the motion, Plaintiff still has not stated that Defendants' action or inaction was a producing cause of her injuries.

4.  Conclusion

As already stated, to state a claim under the DTPA, Hopkins must allege that she is a consumer under the DTPA, that the Defendants "committed a false, misleading, or deceptive act under section 17.46(b) of the DTPA," and that the act was a producing cause of her damages.  Brown, 963 S.W.2d at 513; Tex. Bus. & Comm. Code § 17.50(a).  Hopkins has sufficiently pled that Defendants committed a variety of false, misleading, and deceptive acts under section 17.46(b).  However, Hopkins fails to plead that she is a consumer, and further fails to plead that any of Defendants' false or misleading acts was a "producing cause" of her damages.  Accordingly, Defendants' Motion to Dismiss Hopkins' DTPA claims is **GRANTED**.  The claims are **DISMISSED WITHOUT PREJUDICE**.

## B. Negligent Misrepresentation Claims

A commercial defendant "has a duty to use reasonable care whenever it provides information to its customers or potential customers," and may be liable for a breach of this duty under the theory of negligent misrepresentation.  Federal Land Bank Ass'n of Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991).  In order to make a prima facie claim for negligent misrepresentation, a plaintiff must allege the following four elements:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

Id.  Defendants argue that Hopkins fails to state a claim for negligent misrepresentation because she has failed to allege actual and justifiable reliance upon any representation made by Green Dot, and has further failed to allege causation.  (Dkt. # 19 at 12–15.)  The sufficiency of Hopkins' pleadings as to each element is discussed below.

### 1. Whether Hopkins pled that Defendants made a representation

Hopkins states that "Defendants represented to Plaintiffs that EFT card accounts were not bank accounts; that EFT cards were gift or debit cards; and that EFT cards were affiliated with certain trusted third party companies featured

20

on the card packaging." (Compl. ¶ 65.) While Defendants do not dispute this, the Court notes that it is unlikely for purposes of a negligent misrepresentation claim that Defendants made <u>any</u> representation actionable under a claim for negligent misrepresentation.

Texas has "adopted the tort of negligent misrepresentation as described by the RESTATEMENT (SECOND) OF TORTS § 552." <u>McCamish, Martn, Brown & Loeffler v. F.E. Appling Interests</u>, 991 S.W.2d 787, 791 (Tex. 1999). Section 552 of the Restatement limits the scope of a claim for negligent misrepresentation to those situations where any person, "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions." Restatement (Second) of Torts § 552 (1997).

Texas courts do not recognize the tort of negligent misrepresentation in a context such as this, where a consumer alleges she relied on the misrepresentation or omissions of a product's packaging. Rather, Texas courts, consistent with Section 552 of the Restatement, have found that a cause of action for negligent misrepresentation exists where a professional gives advice upon which the plaintiff relies to her detriment. <u>See, e.g.</u>, <u>McCamish</u>, 991 S.W.2d at 790–95 (finding that a third party, which relied on the incorrect representation of a company's lawyer when signing an agreement with the company, could bring a

negligent misrepresentation claim against the law firm); <u>Sloane</u>, 825 S.W.2d at

442–43 (permitting borrowers to bring negligent misrepresentation case against

their lender, who had wrongly represented to borrowers and their contractor that

loan application had been approved, when it had not, causing loss to borrowers).

In plain language, "[a] cause of action under Section 552 is available only when

information is transferred by a professional to a known party for a known

purpose."  <u>Willis v. Marshall</u>, 401 S.W.3d 689, 699 (Tex. App. 2013).

Accordingly, the Court finds that Hopkins' has failed to plead the first

element of a negligent misrepresentation claim; her allegations involve no direct,

affirmative assertions by a professional acting in the course of her employment.

Nonetheless, for the sake of thoroughness, the Court evaluates the remaining

elements of Hopkins' negligent misrepresentation claim.

2.  <u>Whether Hopkins pled that Defendants supplied false information</u>

Hopkins states that Defendants supplied false information to her

because the MoneyPak cards "were in fact FDIC-insured electronic bank accounts"

when Defendants claimed they were not, because the "EFT cards were not gift

cards or debit cards"; and when Defendants allegedly marketed the EFT cards as if

they were "affiliated with the trusted third party companies featured on the card

packaging," when they were not.  (Compl. ¶ 66.)  Further, Hopkins alleges that

Defendants made misrepresentations by failing to disclose the following

22

information to consumers purchasing EFT cards: (1) certain written disclosures and notices required by the Electronic Funds Transfer Act; (2) the terms of their Cardholder Agreement applicable to card purchasers; (3) the affiliation between MoneyPak cards and Green Dot Bank; and (4) the available rights and remedies available to consumers seeking to recover stolen funds.  (Id. ¶ 67.)

As explained above, there is no Texas case law supporting a misrepresentation claim based upon an omission.  If Hopkins had inquired about the rights and remedies available to her in the event she should need to recover stolen funds, was misinformed as to these rights and remedies, purchased the EFT cards based upon the provided misinformation, and subsequently suffered losses as a result, she may be able to plead a prima facie case for negligent misrepresentation.  However, to the extent that Hopkins' negligent misrepresentation claims are based upon Defendants' alleged failure to disclose certain information, these failures are not active misrepresentations actionable under the tort of negligent misrepresentation.[5]  See Abarca v. CitiMortgage, Inc., 2014 WL 2722206, at *3 (W.D. Tex. June 16, 2014) (requiring "the 'false information' contemplated in a negligent misrepresentation case" to "be a misstatement of an existing fact;" in other words, an active misrepresentation, but

---

[5] However, these business practices, if true, may be actionable under another legal theory.

not a passive omission) (quoting <u>Scherer v. Angell</u>, 253 S.W.3d 777, 781 (Tex. App. 2007)).

While Hopkins <u>may</u> have adequately pled that Defendants supplied false information regarding affirmative representation as to the nature of the MoneyPak cards, Hopkins has not stated a claim as to Defendants' alleged omissions for purposes of a negligent misrepresentation claim. Accordingly, the Court focuses below only as to Plaintiff's allegation that Defendants affirmatively misrepresented that the EFT cards were not FDIC-insured electronic bank accounts, were not gift cards or debit cards, and were not affiliated with the third parties featured on the card packaging.

3. <u>Whether Hopkins pled that Defendants failed to exercise reasonable care</u>

Hopkins alleges that Defendants failed to exercise reasonable care in communicating with herself and other consumers, because Defendants failed to "provide adequate disclosures, notices, or warnings on EFT card packaging, at the checkout register at the time of sale, or thereafter." (Compl. ¶ 68.) Defendants do not dispute the issue of reasonable care and the Court, for purposes of this motion, does not analyze it.

4. <u>Whether Hopkins pled that she suffered pecuniary loss due to justifiable reliance on Defendants' representations</u>

Hopkins has pled that Defendants' representations and omissions caused her to suffer economic losses of $14,083.52: the total amount of money she

transferred onto MoneyPak cards and fees associated with doing so.  (Compl. ¶ 71.)  Defendants argue that Hopkins' pleadings fail to satisfy this prong for three reasons: (1) Hopkins does not allege that she relied on Defendants' representations or omissions when she purchased the cards or that she selected the MoneyPak cards among other options based upon these representations or omissions (Dkt. # 19 at 12–13); (2) MoneyPak's alleged representations or omissions did not cause Hopkins to provide the serial number on eighteen MoneyPak cards to a caller claiming to be her grandson (id. at 13–14); and (3) to the extent Hopkins did rely on Defendants' representations or omissions, Hopkins' reliance was not the cause of her losses (id. at 14–15).

Hopkins responds that "if sufficient disclosures had been provided or if adequate fraud protections had been employed, she would not have fallen victim to third party fraud."  (Dkt. # 23 at 16.)  She urges the Court to consider the question of justifiable reliance in light of "the relationship between the parties and their relative sophistication."  (Id. at 15–16) (quoting 1001 McKinney Ltd. v. Credit Suisse First Boston Morg. Cap., 192 S.W.3d 20, 30 (Tex. App. 2005)).

However, under Texas law, the question is not whether a plaintiff's reliance was justifiable, but whether direct reliance on a misrepresentation actually caused plaintiff's injury.  In re Sunpoint Sec., Inc., 377 B.R. 513, 560 (E.D. Tex. 2007) ("[A]ctual reliance [is] an essential element of a cause of action for negligent

misrepresentation.").  Accordingly, a plaintiff who fails to plead that an injury was suffered as a result of direct reliance on the misrepresentation fails to state a negligent misrepresentation claim.  See Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 686 (Tex. 2003) ("Reliance is not only relevant to, but an element of proof of . . . negligent misrepresentation.").

Here, even assuming arguendo that Hopkins directly relied on Defendants' affirmative misrepresentation that the EFT cards were not FDIC-insured electronic bank accounts, were not gift cards or debit cards, and were not affiliated with the third parties featured on the card packaging, Hopkins does not allege that her losses were the direct result of these misrepresentations.  Rather, Hopkins acknowledges that her losses occurred as a direct result of a third party criminal pretending to be her grandson.  Hopkins has not alleged that she suffered pecuniary loss by relying on Defendants' misrepresentation.  Accordingly, Hopkins has failed to state a claim for negligent misrepresentation.

5.  Conclusion

Hopkins has failed to plead that Defendants made any direct, affirmative assertions, or that her losses occurred as a result of direct reliance upon any such assertion.  Accordingly, Hopkins has failed to state a claim for negligent misrepresentation.  This claim is **DISMISSED WITHOUT PREJUDICE**.

C. <u>Class Action Complaint</u>

Because the Court has found that Plaintiff has failed to state a claim upon which relief can be granted, it declines to address Plaintiffs' class action complaint.

III.    <u>Motion to Amend</u>

Before this Court issued an order on the instant Motion to Dismiss, Plaintiff filed a Motion to amend her complaint (Dkt. # 26).  The proposed amended complaint suffers from many of the same deficiencies in the original complaint, which are explained above.  Accordingly, Plaintiff's Motion to Amend is **DISMISSED WITHOUT PREJUDICE**.  (Dkt. # 26.)  Should Hopkins deem in good faith that she has legally actionable claims against Defendants, she may file a revised Amended Complaint within thirty (30) days of the date of this order. Should Hopkins fail to meet this deadline, the Court will sua sponte dismiss this case without prejudice.

IV.    <u>MOTION FOR SUMARY JUDGMENT</u>

Plaintiff filed a Motion for Summary Judgment on the issue of Defendants' sixth affirmative defense regarding the DTPA claim, and asks the Court to rule as a matter of law that the defense does not bar Plaintiff's negligent misrepresentation claim.  (Dkt. # 42 at 6–9.)

The affirmative defense at issue argues that "Plaintiff's [DTPA] claims are barred, in whole or in part, because any damages she suffered were the result of the criminal acts of a third person for whom Defendants are not responsible."  (Dkt. # 1-2 at 36.)  This Court dismissed Hopkins' DTPA claim, above, after finding that she failed to plead she is a consumer, and further failed to plead that any of Defendants' false or misleading acts was a "producing cause" of her damages.  Accordingly, the DTPA claim has been dismissed, and Hopkins' motion for summary judgment on the issue is **DENIED AS MOOT** (Dkt. # 42.)

## CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** the Motion to Dismiss (Dkt. # 19), **DENIES** Plaintiffs' Motion to Amend Complaint (Dkt. # 26), and **DENIES AS MOOT** Plaintiff's Motion for Summary Judgment (Dkt. # 42).  The November 22, 2016 hearing currently scheduled on the Motion for Summary Judgment is hereby **CANCELLED** (Dkt. # 43).  Plaintiffs may file an amended complaint within 30 (thirty) days of the date of this order.  If Plaintiff fails to do so, this case will be dismissed without prejudice.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, August 24, 2016.

_____

David Alan Ezra
Senior United States Distict Judge

28